# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK WINNE & SON, INC., | : | |
| Plaintiff, | : | **Hon. Joseph H. Rodriguez** |
| v. | : | Civil Action No. 18-15811 |
| UPU INDUSTRIES, INC., | : | |
| Defendant. | : | **Opinion** |

This matter comes before the Court on a motion by Defendant UPU Industries, Inc. ("UPU") to dismiss or transfer and cross-motion by Plaintiff Frank Winne & Son, Inc. ("Winne") to obtain jurisdictional discovery. Plaintiff Winne is a New Jersey corporation with its principal place of business in Mount Laurel, NJ. [Dkt. No. 1, Complaint, ¶ 1]. Defendant UPU is a Kansas corporation with its principal place of business in Junction City, Kansas. Id., ¶ 2.

Winne manufactures, imports and distributes agricultural packing products, such as ropes, twines, tapes, bale wraps, and rubber products, through its sales offices and warehouses throughout the United States. Id. at ¶ 7]. Bale wrap is used by farmers to wrap harvested hay into bales with

1

a rolled form. Id., ¶ 8. Winne purchases the bale net wrap from suppliers to sell to its customers. Id., ¶ 9.

In 2008, Winne began purchasing bale net wrap from UPU, ultimately buying around $16,000,000 in agricultural products from UPU up through 2018. Aversano Aff., ¶ 5. UPU engaged in a series of transactions over the course of several years with Winne, whereby Winne sent purchase orders to UPU and UPU sent invoices to Winne. The invoices sent by UPU contained the terms and conditions of sale, one of which required disputes relating to the contract to be resolved in Geary County, Kansas.

UPU contends that it is not subject to jurisdiction in New Jersey. In the alternative, UPU argues the case must be transferred to Kansas because New Jersey is an improper venue and because the forum selection clause requires transfer. Finally, UPU argues that, even if the forum selection clause does not apply, transfer is still proper in consideration of the public and private interest factors at play in the case.

Winne argues that this Court has specific jurisdiction over UPU, and that venue is proper in this Court. Having considered the parties' submissions, the Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the

Court will deny the motions to dismiss and for jurisdictional discovery and grant the motion to transfer venue.

I. **<u>Background</u>**

The purchase orders at issue that Winne sent to UPU state that they come from Winne's Philadelphia branch, with a notice to send an original and a copy of the invoice to Winne's Mount Laurel, NJ office. Aversano Aff., ¶ 6-7. However, the reference to the "Philadelphia branch" is really a reference to the Mount Laurel office, as Winne has not had a Pennsylvania office since September 2007, before Winne started purchasing from UPU. <u>Id.</u>, ¶ 7.

In the typical order of business, Winne sent purchase orders to UPU via email or fax, detailing the names and addresses of the parties, a description of the purchased goods, the unit and total prices, the shipping address, and the NET 30 payment terms of the purchase. <u>Id.</u>, at ¶ 6. After receiving the purchase order from Winne, UPU would process the order and notify Winne of the shipping status of the order. <u>Id.</u>, ¶ 8. Around the time the goods were shipped, UPU would send invoices for the orders to Winne. <u>Id.</u> These invoices included UPU's terms and conditions of sale on the back of each invoice. Orr Decl., ¶ 8. Section 1 of the Terms and Conditions states,

> COMPLETE AGREEMENT. These terms and conditions may NOT be altered, supplemented, or amended by the use of any other document . . . All sales are expressly made conditional on acceptance of these conditions. Acceptance by Purchaser of the products described on the front of this Purchase Order/Invoice (the "goods") shall constitute acceptance of these conditions by Purchaser.

Section 10 of the Terms and Conditions states,

> GOVERNING LAW. This agreement shall be governed and construed in accordance with the laws of the State of Kansas. Purchaser agrees that in any legal action or proceeding between Seller and Purchaser for any purpose concerning this agreement, or arising out of Purchaser's dealings with Seller, agrees to submit to exclusive jurisdiction in, and agrees that venue is proper in, Geary County, Kansas . . .

Typically, the orders had already shipped by the time Winne received the invoices from UPU. Aversano Aff. ¶ 9. The terms also included a 90-day warranty period beginning on the date of purchase. Id. ¶ 19. However, that was not always enforced as Winne occasionally ordered net wrap from UPU which was later found to be defective. On at least one such occasion, UPU issued a refund for the defective purchase nearly a year after the date of the original purchase order. Id. Furthermore, there is no evidence that UPU denied a claim by Winne because it exceeded the 90-day warranty. Id. ¶ 21.

Around 2013 or 2014, Winne requested UPU to send its invoices via email instead of sending paper copies. Orr. Decl. ¶ 15. The electronic invoices only contained the first page with the material terms of the order;

the electronic invoice did not include the "back side" of the paper invoice detailing UPU's terms and conditions of sale. Id. ¶ 16. However, UPU followed up these electronic invoices by sending bulk packages of paper invoices to Winne, which included the terms and conditions. Id. at ¶ 17. The parties disagree on the frequency of these mailings, but Winne did receive a bulk package of invoices from UPU in 2018. Aversano Aff. ¶ 12.

In addition to this exchange of paperwork, UPU representatives visited Winne's office in Mt. Laurel annually, from 2014 through 2017. Id. ¶ 14. These visits were designed to foster the business relationship between UPU and Winne, and to encourage Winne to purchase greater quantities of UPU's products. Id. ¶ 15. UPU used these visits to discuss pricing with Winne and to promote its products to Winne, sometimes through the use of samples. Id. ¶ 15, 18.

In November 2017, Winne submitted six purchase orders for bale wrap to be shipped directly from UPU to Hennessy Implement, one of Winne's customers in Dodgeville, Wisconsin. Aversano Aff., ¶ 22. UPU filed the orders and invoiced Winne for the orders around late January and early February 2018. Complaint, ¶ 13. In the spring of 2018, Hennessy began to sell the bale wrap from UPU to its customers. Id. ¶ 15. In May of that same year, Winne began receiving complaints from Hennessy about the quality of

the bale wrap from UPU. Id. ¶ 16. Winne ultimately received twenty-nine (29) complaints from farmers regarding the bale wrap it had purchased from UPU. Aversano Aff. ¶ 23. Michael Aversano, co-president and co-owner of Winne, testified that he had "never received so many complaints about a product in such a short period of time." Id. ¶ 24. Upon investigation, Winne found the product to be defective, and refunded the full purchase price of $417, 890 to Hennessy for the bale wrap purchased from UPU. Complaint, ¶ 17-18, 20.

After issuing the refund to Hennessy, Winne requested UPU to accept the defective materials and issue a full refund to Winne. UPU refused to accept the defective products and issue a refund, stating its 90-day warranty had expired by the time the Hennessy customers began complaining about the performance of the bale wrap in May 2018. Id. ¶ 22. Winne subsequently sued UPU for breach of contract and quantum meruit/unjust enrichment.

UPU now requests this court to dismiss the action for lack of jurisdiction or improper venue. In the alternative, UPU requests the Court to transfer the case to the District of Kansas or the state courts of Kansas pursuant to the forum selection clause in UPU's terms and conditions of sale. UPU's arguments are as follows. First, there is no personal

jurisdiction over UPU in New Jersey and the action must be dismissed pursuant to Fed. R. Civ. P. 12 (b) (2).  Second, UPU argues that because venue is improper under 28 U.S.C. § 1391, the case should be transferred to the District of Kansas under 28 U.S.C. § 1406.  In the alternative, UPU argues that the parties' forum selection clause requires dismissal for *forum non conveniens* or transfer under 28 U.S.C. § 1404.  Finally, notwithstanding all the forgoing arguments, UPU claims that 28 U.S.C. § 1404 requires transfer because of the compelling public and private factors.

Winne argues that the District of New Jersey has personal jurisdiction over the Defendants, that venue is proper, and that the forum selection clause does not govern the choice of forum because the clause was not regularly included on the invoices, was routinely sent well after the execution of the contract, and that parties' course of dealing requires that it not be considered.  In the alternative, Winne asks for jurisdictional discovery. The Court will address the issues in turn.

## II. **Standard of Review and Analysis**

A. Specific Jurisdiction

Courts exercise personal jurisdiction over nonresident parties through either general jurisdiction or specific jurisdiction. See Helicopteros Nacionales De Columbia v. Hall, 466 U.S. 408, 414-15 (1984). General

jurisdiction is proper over a foreign corporation with contacts so systematic and regular that they are "essentially at home" in the forum state. <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011). Winne argues that specific jurisdiction exists over UPU.

Specific jurisdiction over a foreign corporation requires that corporation to have an affiliation between the forum State and the underlying controversy, principally involving activity that takes place within the forum State and is therefore subject to its regulation. <u>Id.</u> Because of its limited scope, cases brought under specific jurisdiction must be related to the activity or occurrence that establishes specific jurisdiction in the particular forum. <u>Bristol-Meyers Squib Co. v. Superior Court of California, San Francisco County</u>, 137 S. Ct. 1773, 1780 (2017). New Jersey's long-arm statute allows Courts to exercise jurisdiction over nonresident parties within the due process limits of the United States Constitution; therefore, parties with constitutionally sufficient "minimum contacts" are amenable to suit in New Jersey. <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 96 (3d Cir. 2004). The plaintiff bears the burden of establishing personal jurisdiction, and a court reviewing a motion to dismiss for lack of personal jurisdiction must accept all the plaintiff's allegations as true and construe

disputed facts in favor of the plaintiff. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

A determination of whether or not minimum contacts exist is a determination of fact. North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 688 (3d Cir. 1990). The Third Circuit follows a three-step inquiry when determining whether specific jurisdiction exists over a defendant. First, the defendant must have "purposefully directed [its] activities" at the forum. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). This requires a deliberate targeting of the forum by the defendant. Sandy Lane, 496 F.3d at 317. Unilateral activities directed at a non-resident defendant are not sufficient to create specific jurisdiction. Id.; see also Hanson v. Denkla, 357 U.S. 235 (1958) (no specific jurisdiction over an individual who exercised powers of appointment over a trust established with a trustee in a different state after moving to the forum state).

Second, the litigation must "arise out of or relate to" at least one of those activities directed at the forum. Sandy Lane, 496 F.3d at 317 (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). In conducting the "related to" inquiry, courts approach each case

individually, taking a "realistic approach." <u>Sandy Lane</u>, at 320 (<u>quoting</u> <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 99-100 (3d Cir. 2004)). In contract cases, courts evaluate whether the defendant's contacts with the forum are instrumental in either the formation of the contract or its breach. <u>General Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001). Although the formation of a contract alone does not automatically establish sufficient minimum contacts with the forum, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether minimum contacts exist in contract cases. <u>Burger King</u>, 471 U.S. at 478-79. When parties reach outside of their state to create continuing relationships and obligations in another forum State, courts "are not reluctant to find personal jurisdiction" over their out-of-forum activities. <u>General Elec.</u>, 270 F.3d at 150. In modern commercial settings, electronic communication is sufficient to create minimum contacts, and territorial presence becomes less determinative. <u>Id.</u> at 150-51.

Finally, if the prior two conditions are met, courts consider whether the exercise of jurisdiction comports with "fair play and substantial justice." <u>Sandy Lane</u>, 496 F.3d at 317 (<u>quoting</u> <u>Burger King</u>, 471 U.S. at 476). If a plaintiff makes a successful showing of minimum contacts, jurisdiction is

presumptively constitutional, and the defendant bears the substantial burden of proving that other considerations would make jurisdiction unreasonable. Sandy Lane, 496 F.3d at 324. These factors involve the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies.[1] Id.

The Court finds that all three factors indicate that the Court has specific jurisdiction over Defendants. UPU sent sales team members and regular invoices to the State of New Jersey, despite the nomenclature of the Mount Laurel, New Jersey office being referred to as the Pennsylvania branch. To the extent that those relationships and visits fostered a continued business relationship, the contacts are relevant to the alleged breach at issue and sufficient to confer specific jurisdiction. Finally, given the fact that electronic communications were frequently directed to the State of New Jersey, exercising personal jurisdiction over the Defendants comports with the notions of fair play and justice. Physical entrance into the jurisdiction is

---

[1] Another factor identified by the Supreme Court is the "procedural and substantive interests of other nations." Sandy Lane, 496 F.3d at 324 (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 115 (1987). The Court does not reach this question because there are no international interests at stake in this case.

not required, during negotiations or any other time, to find jurisdiction over a non-resident. Corigliano v. Classic Motor, Inc., 611 F.App'x 77, 80 (3d Cir. 2015); Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993). Rather, telephone, wire, and other electronic "communications can constitute contacts with the forum state." Telcordia Tech Inc., 458 F.3d at 177 (citing Burger King Corp., 471 U.S. at 476)); Gen. Elec. Co., 270 F.3d at 151. Winebow, Inc. v. Rhode Island Distrib. Co., LLC, No. CV 17-4833, 2018 WL 1605153, at *5 (D.N.J. Apr. 3, 2018) General Elec., 270 F.3d at 150. As a result, the Court has personal jurisdiction over Defendants.

While UPU's sole physical location is in Kansas, and therefore its witnesses are located in that state as well, that fact alone does not deprive this Court of jurisdiction. The Court finds that it has jurisdiction over this action and the parties.

B. Dismissal or Transfer

A court determining whether to dismiss or transfer a case for purposes of venue applies either 28 U.S.C. § 1404 or 28 U.S.C. § 1406. The court of a district "in which is filed a case laying venue in the wrong division or district" applies § 1406 to dismiss the action or transfer it to a division or district in which it could have been brought. Only the application of §

1406—which applies if the original venue is improper—may give rise to a dismissal under these circumstances. Jumara v. State Farm Ins., 55 F.3d 873, 878 (3d Cir. 1995). In contrast, § 1404 is used to transfer a civil action to "any other district or division where it might have been brought or to any district or division to which all parties have consented." Courts applying § 1404 have authority to transfer an action even if the original venue is proper. Jumara, 55 F.3d at 878.

UPU contends that venue is improper under 28 U.S.C. § 1391 because it is a citizen of the State of Kansas and because a substantial part of the events did not take place in New Jersey. In general terms, venue lays in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The question here is whether a substantial part of the events giving rise to Winne's claim occurred in the District of New Jersey conferring venue pursuant to § 1391(b)(2). Courts in this Circuit apply the evaluative

reasoning set forth in <u>Cottman Transmission Sys., Inc., [sic] v. Martino</u>, which measures whether the events or omissions supporting a claim are "substantial," and bear more than "some tangential connection with the dispute[.]" <u>Cottman Transmission Sys., Inc., [sic] v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994). The importance of the substantiality requirement is to "preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." <u>Id.</u> at 294.

The nature of the dispute informs the analysis of whether the events that took place in a forum are substantial. <u>Id.</u> at 295. According to the Complaint, Winne generated and issued six purchase orders for the bale net wrap to UPU in Kansas, Compl. Exs. A & B. UPU then sent the invoices to Winne and Winne arranged for the bale net wrap to ship from UPU to its customer in Wisconsin. <u>Id.</u> When Winne's customer complained that the bale net wrap was defective, those complaints were directed to Winne in New Jersey and then relayed by Winne to UPU in Kansas.

The parties highlight several considerations related to the alleged breach in this case. First, there is no dispute that the alleged defective product was manufactured by UPU in Kansas. There is no dispute that Winne initiated the purchase orders in New Jersey and that they were fulfilled in Kansas. According to Winne, the issue is whether the invoice sent in relation to the

breach at issue contained a forum selection clause, whether the nature of the business relationship between the parties since 2008 created a course of dealing obviating the forum selection clause invoice generated by UPU, and whether the lack of contemporaneous submission of the invoice to the order (the invoice arrived some time after the purchase order for Wisconsin was fulfilled) vitiates the forum selection clause.

Winne's arguments fail to demonstrate facts in the Complaint indicating that the breach occurred in New Jersey. Rather Winne's arguments that UPU solicited business from New Jersey, electronically and by physically coming to New Jersey, relate to the Court's jurisdiction, a separate and distinct consideration from venue. "The test for determining venue is not the defendant's "contacts" with a particular district, but rather the location of those "events or omissions giving rise to the claim.' " Cottman Transmission, 36 F.3d 294; Ferratex, Inc. v. U.S. Sewer & Drain, Inc., 121 F. Supp. 3d 432, 437 (D.N.J. 2015).

In addition, Winne's sole authority for conferring venue in New Jersey proves adverse to its argument. In Winebow, Inc. v. Rhode Island Distrib. Co., LLC, No. CV 17-4833, 2018 WL 1605153, at *9 (D.N.J. Apr. 3, 2018), the district court found that venue in New Jersey was proper in a case between a New Jersey based wine distributor and a Rhode Island based

wholesale distributor. The Defendant Rhode Island wine wholesaler sent business documents, including the initial engagement letter and a credit application, purchase orders and bill-back invoices, to the New Jersey Plaintiff.  The direction of the business documents going from Rhode Island to New Jersey formed the district court's decision that venue was proper in New Jersey.  In addition, the Rhode Island Defendant, as a wholesaler, made the arrangements for the product to be picked-up from New Jersey. The district court concluded that the totality of the parties' dealings "shows that a substantial part of the events giving rise to the underlying claim occurred in the District of New Jersey." <u>Id.</u>, 2018 WL 1605153, at *9.

Here, the contract was formed in Kansas as was the decision to deny Winne's return of the bale wrap, the physical location of UPU's decisions makers. The defective product was allegedly manufactured in and distributed by UPU in Kansas and sent to Wisconsin, the location where the alleged defect was discovered. Plaintiff initiated the business relationship at issue by sending purchase the six orders to Kansas and remitting payment to Kansas.  The only activity alleged to take place in New Jersey is the receipt of the invoice/bill for the product.  Applying the reasoning espoused by the district court in <u>Winebow</u>, the bulk of the events germane to the underlying claims arose in Kansas.

The Court finds that venue is improper under 28 U.S.C. § 1391 because a substantial part of the events did not take place in New Jersey. The Court will deny Plaintiff's request for jurisdictional discovery because, while the Court has already determined that it has jurisdiction, such discovery will not aid in the consideration of venue. See Toys "R" Us, Inc. v. Step Two S.A., 318 F.3d 446, 456 (3d Cir. 2003) (Unless the claim is "clearly frivolous" courts should assist plaintiffs in meeting their burden by allowing jurisdictional discovery); Hirchbach v. NVE Bank, 496 F.Supp.2d 451, 460 (D.N.J. 2007) (noting that "a federal court may have to engage in some fact finding, not unlike what is necessitated by the existing jurisdictional statutes.") (citations omitted).

As a result, the Court will exercise its discretion and transfer venue to the District of Kansas pursuant to 28 U.S.C. § 1406. The Court also finds that even if venue is proper under 28 U.S.C. § 1391, transfer is also warranted under 28 U.S.C. § 1404 because the arguments in favor of enforcing the forum selection clause are persuasive and transfer is in the interest of fairness.[2] See Atl. Marine Const. Co. v. U.S. Dist. Court for W.

---

[2] The burden factor weighs in favor of litigation in Kansas. UPU's sole location is in Junction City, Kansas. Orr Decl. ¶ 5. In contrast, Winne has warehouses and offices nationwide. UPU's witnesses are ostensibly located in Kansas, which would make it more burdensome to litigate in NJ. Kansas ostensibly has an interest in regulating the products produced by its citizens. Furthermore, Kansas would be an efficient venue to resolve these conflicts, especially in light of the forum selection provision and the choice-of-law provision in the terms and conditions.

Dist. Of Tex., 571 U.S. 49, 59-60 (2013) (quoting Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (KENNEDY, J., concurring)) (Courts evaluating a transfer pursuant to a forum selection clause must give the clause "controlling weight in all but the most exceptional cases.").

### III. **Conclusion**

For the reasons set forth above, Defendant's Motion to dismiss or transfer venue is granted in part and denied in part. The Court will not dismiss the action, but will transfer it to the District of Kansas pursuant to 28 U.S.C. 1406. Plaintiff's motion for jurisdictional discovery will be denied.

An appropriate Order shall issue.

Dated: March 25, 2020

                                           s/ Joseph H. Rodriguez
                                           Hon. Joseph H. Rodriguez,
                                           UNITED STATES DISTRICT JUDGE